Sea Girt Estates, a corporation, complainant,

v.

Susan M. Sutton et al., defendants.

[Decided October 4th, 1929.]

*Mr. William A. Moore* and *Mr. Howard K. Shaw,* for the complainant.

*Mr. Harry R. Cooper,* for the defendants.

Berry, V. C.

This bill is by the vendor against the vendees and seeks the specific performance of a contract for the sale of lands located at Sea Girt, New Jersey. The cause was heard by me on May 23d, 1929, and at the conclusion of the hearing I announced that I would advise a decree for the complainants. An appeal having been taken from that decree these conclusions are written for the purpose of that appeal.

The contract was dated September 23d, 1925, and provided for certain installment payments on account of the purchase price before settlement. The lands the subject of the contract consisted of a large number of lots described by lot number and block number and comprising several blocks

of land and were referred to as shown on "Map of Sea Girt, New Jersey, Frank Osborne, 1909." The making of the agreement and the refusal of the defendants to perform are admitted. The defense is that the complainant cannot convey what it agreed to convey as it does not have title to some of the lots mentioned in the agreement, particularly lots Nos. 32 and 33, block 59 on the map referred to. Defendants claim that they bought the lots according to the map mentioned in the agreement *as filed in the office of the clerk of Monmouth county.* As a matter of fact, the complainant never owned the lots as shown on that map. These lots, originally, faced on what was known as the Plaza, but several years before the date of the contract the borough took a part of the land owned by the complainant's predecessor in title for the purpose of widening the Plaza and Crescent Parkway and lots 32 and 33 were then re-arranged by the then owner so that they fronted on Crescent Parkway instead of the Plaza. Defendants claim they did not know this and insist that as complainants cannot convey that portion of the lands which was taken by the borough, that is, lots 32 and 33, block 59, as originally laid out, the defendants are not obliged to perform. They claim not to have discovered this deficiency in the lands the subject of the contract for some months after the contract was executed, although before the date fixed for settlement. The deficiency, if there is one, is not such as might not be compensated for by an abatement in the purchase price, as it constitutes a very small portion, relatively, of the whole tract the subject of the sale, and an allowance on the settlement for such deficiency might very well be made, if necessary. It appears that after the widening of the Parkway and the Plaza the Sea Girt map was amended accordingly, particularly the Frank Osborne map of 1909 mentioned in the contract, and the original map which hung on the wall of the office of the defendant E. V. Patterson, Jr., Incorporated, in Sea Girt, was corrected by the drawing of pencil lines thereon to show the property which was taken by the borough and the new location of lots 32 and 33. This was the map from which the complainants

bought and it was this particular map which was referred to in the contract which is the subject of this suit.

The description of the property as contained in the contract here involved was given to Mr. Van Note, the lawyer who prepared the contract, by Mr. Bond, the vice-president of the defendant corporation. The map referred to in the contract, corrected to show the changes made necessary by the borough's appropriation of some of the lots to public use or an exact corrected copy thereof was in Bond's (corporation) office when he gave Mr. Van Note the description for the contract and the conclusion that it was this corrected map to which he referred in making up the description is inescapable. There is, therefore, in this case, no question of variation of the terms of a written instrument or of reformation of the contract, as might be argued, but rather what map was meant by the reference in the written agreement. Was it the map as originally prepared, a copy of which was filed in the county clerk's office, or was it the corrected copy in the possession of the defendant E. V. Patterson, Jr., Incorporated? I am convinced that it was the latter and that the lots named in the contract were those shown on that map. Both Patterson and Bond knew of the alteration in the original layout of the property and of its notation on this map. That all of the defendants knew all about the change in the layout of these lots, and knew exactly what they were buying when the contract was made, I have no doubt. It appears from the evidence that E. V. Patterson, Jr., who is the president and the main factor in the defendant corporation, was instrumental in selling these lands to the complainant and afterwards acted as selling agent for the lots. At the time of that sale he explained to the complainants the alteration in the map. He finally formed the syndicate the members of which are the defendants in this cause. There can be no question, therefore, but that he (Patterson) knew all about the change in the layout; in fact, when he sent the contract here involved to the complainants to be executed he also sent to them by mail a number of copies of a new map which is known as the

"Amended Map of Sea Girt, by Frank Osborne." This new map shows the new layout of the lots as indicated by the pencil corrections on the original map which hung on the wall in Patterson's office. The other defendants claim, however, that his knowledge of this change is not imputable to them because he was the agent of the complainants. It is true that he had previously sold lots for the complainant but it is clear that in this transaction he was not the complainant's agent, but he, or his company, was one of the purchasers from the complainant and represented the other defendants in the negotiations which resulted in the contract. He could not be both purchaser and agent for the seller. I think the evidence very clearly shows that in all this transaction he represented and acted for the other defendants and that the defendants were chargeable with whatever knowledge he had. There was an attempt to deny that he represented and acted for the other members of the syndicate, but every member who testified finally admitted his agency, and this was apparent. Aside, however, from this fact and the knowledge which he had, I think I am justified in finding by the evidence that the other members of the syndicate knew of the change in the plan of the lots and that they did not buy from the map as it was originally prepared, but that they bought from the map as corrected by the pencil markings referred to; and that each and every one of the syndicate knew what property they were buying. Miss Sutton, one of the defendants, frankly admitted that she knew exactly what she was buying and did not buy from the map at all. The testimony of the other defendants in support of their defense was rendered of little value by cross-examination and it is quite significant that E. V. Patterson, Jr., the controlling factor in the defendant corporation, did not testify at all and no explanation was offered as to why he did not.

There is still another reason why the complainants are entitled to a decree. All the defendants who testified said that they discovered the deficiency in the land sometime prior to January 14th, 1928. It would appear that that

discovery was made sometime during the early fall of 1927. Notwithstanding this fact, no attempt at rescission was made and on January 14th, 1928, Mr. Patterson, on behalf of the syndicate, wrote to the complainant fixing a time for settlement under the contract. The attitude and actions of the defendants subsequent to the discovery of the alleged deficiency in land might well be taken to be an affirmance of the contract and a waiver of their right to rescind. But the fact is, however, that there was no disagreement or misunderstanding between the parties as to the exact land which was the subject of the contract when it was executed, nor as to the map referred to therein, and it was only months later that the defendants came to the conclusion that the map referred to in the agreement was not the one from which they purchased. They, or some of them, at least, had evidently then become disappointed with their bargain, and sought to evade their responsibility under the contract by a futile attempt to show that the complainant had contracted to sell something it did not own.

For these reasons I advised the decree from which this appeal has been taken.